**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL L.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-15667 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Michael L.'s[1] ("Michael" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Michael's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

In this appeal, the Court must answer the following question: Did Administrative Law Judge Ricardy Damille ("the ALJ" or "Judge Damille") properly analyze, with substantial evidence, Michael's residual functional capacity under the Social Security Act?

### A. PROCEDURAL POSTURE

On April 12, 2022, Michael filed an application for a period of disability and Supplemental Security Income benefits, alleging an onset date of December 20, 2021. (*See* Administrative

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

Record ("AR") at 119.)[2] The Social Security Administration (the "Administration") denied the requests both initially, (*id.* at 145–49), and on reconsideration, (*id.* at 153–56). Thereafter, Michael requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 157–59.) On May 31, 2024, Michael, who was represented by counsel, and Mary Vasishth, a vocational expert ("VE"), testified at a hearing before Judge Damille. (*Id.* at 50–84.) On August 22, 2024, Judge Damille issued a written decision finding that Michael was not disabled. (*Id.* at 21–49.) The Administration's Appeals Council denied Michael's request to review Judge Damille's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on December 27, 2025. (ECF No. 7.) Michael then filed his moving brief, ("Pl. Br.," ECF No. 10), the Commissioner filed an opposition, ("Opp.," ECF No. 12), and Michael replied, ("Reply," ECF No. 13).

### B. JUDGE DAMILLE'S DECISION

In his comprehensive 20-page decision, Judge Damille held that Michael was not disabled under the prevailing Administration regulations. (*See generally* AR at 24–44.) To reach this conclusion, Judge Damille analyzed Michael's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. § 416.920(a)(4)(i)–(v). Michael disputes Judge Damille's conclusions at Step Four and Five. (*See* Pl. Br. at 16–23.) For the sake of completeness, the Court will summarize each step of Judge Damille's analysis before focusing on the specific portions thereof with which Michael takes issue.

At Step One, Judge Damille found that Michael had not engaged in substantial gainful activity since April 12, 2022, his application date. (AR at 26–27 (citing 20 C.F.R. § 416.971 et

---

[2] The Administrative Record ("Record" or "AR") is docketed at ECF Nos. 7-1 through 7-17. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

seq.).) At Step Two, Judge Damille found that Michael suffers from six severe impairments: (1) degenerative disc disease of the lumbar, cervical, and thoracic spine; (2) asthma; (3) chronic obstructive pulmonary disease ("COPD"); (4) bipolar disorders; (5) anxiety disorder; and (6) schizophrenia. (*Id.* at 27–28 (citing 20 C.F.R. § 416.920(c)).) Judge Damille concluded that these severe impairments "significantly limit" Michael's ability to perform basic work activities. (*Id.* at 27.) Also at Step Two, Judge Damille found that Michael has four non-severe impairments: (1) bursitis of the knee and hip, (2) carpal tunnel syndrome ("CTS"), (3) hypertension, and (4) obesity. (*Id.*) In reaching that conclusion, Judge Damille considered Michael's testimony and treatment records. (*Id.* (citing AR at 134, 333, 335–36, 363, 411–12, 883–96, 1492, 1522–23).)

With respect to Michael's non-severe impairments, Judge Damille found that "there is no evidence of more than minimal work-related limitations due to these conditions." (*Id.* at 27.) First, as to Michael's bursitis of the knee and hip, Judge Damille observed that Michael "ambulated without difficulty" and without using an assistive device during his consultative physical examination ("physical CE"), could heel and toe walk, and was found to have a "normal [range of motion] of the hips and knees, with both knees described as 'stable.'" (*Id.* (citing AR at 885).) Second, Judge Damille found CTS non-severe based on, *inter alia*, evidence from the same physical CE, during which Michael demonstrated "normal range of motion . . . of the shoulders, elbows, forearms, wrists and fingers" and "normal reflexes and no motor or sensory abnormality in the upper extremities" and was "able to make a fist and oppose the thumbs, fully extend the hands, separate papers and button buttons," with "grip strength rated at 5/5 bilaterally." (*Id.* (citing AR at 883–96).) The ALJ also noted that "there is no evidence of treatment for CTS during this period." (*Id.*) Third, Judge Damille considered Michael's hypertension. (*Id.*) Although the state

agency consultants included hypertension as a severe impairment in their prior administrative medical findings ("PAMFs"), Judge Damille observed that Michael "did not report work-related limitations due to hypertension/[high blood pressure]" and "has not reported taking medications to treat [high blood pressure]." (*Id.* (citing AR at 134, 333, 335–56, 363, 411–12).) Finally, with respect to Michael's obesity, Judge Damille explained that Michael's Body Mass Index ("BMI") had dropped "below the threshold for obesity," and the record lacked "evidence for greater functional limitations with the context of obesity." (*Id.* at 28 (citing AR at 883–96, 1522; SSR 19-2p, 2019 WL 2374244 (May 20, 2019)).) Judge Damille noted that, although Michael's BMI reflected that he was obese as of January 2023, Michael had lost 22 pounds by September 2023 such that his BMI classification changed to "overweight, but not obese." (*Id.* at 27 (citing AR at 1492, 1522).) Furthermore, even when Michael exceeded the obesity threshold at his February 2023 physical CE, he "was able to ambulate without difficulty, get on and off the examining table without assistance, and not use a cane or crutches." (*Id.* at 27–28 (citing AR at 884).) Judge Damille thus found Michael's obesity to be non-severe. (*Id.* at 28.)

At Step Three, Judge Damille determined that Michael does not have "an impairment or combination of impairments" that qualifies under the Administration's listed impairments, set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (*Id.* (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).) Judge Damille considered, but found inapplicable, the Administration's Listings for four physical impairments ("disorders of the skeletal spine resulting in compromise of a nerve root," "abnormality of a major joint in any extremity," "chronic respiratory disorders," and "asthma") and three mental impairments ("schizophrenia spectrum and other psychotic disorders," "depressive, bipolar and related disorders," and "anxiety and obsessive-compulsive disorders"). (*Id.* (citing Listings §§ 1.15, 1.18, 3.02, 3.03, 12.03, 12.04, and 12.06); *see id.* at 28–31.)

In analyzing the mental impairment Listings, Judge Damille reviewed Michael's consultative psychological evaluation ("psychological CE"), the PAMF of the state agency psychological consultant on reconsideration, treatment records of Michael's mental health treatment providers including his primary care physician, a Third-Party Function Report completed on Michael's behalf, and Michael's subjective statements. (*Id.* at 29–31 (citing AR at 134, 138–40, 350–57, 367–74, 879–81, 933–1113, 1501–68, 1576–77).) Judge Damille found that Michael is neither "markedly" nor "extremely" limited with respect to any of the relevant areas of mental functioning. (*Id.*); *see* Listings § 12.00(A)(2)(b), (F). Instead, he found Michael has "moderate" limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (AR at 29–31.)

In concluding that Michael was moderately limited in understanding, remembering, or applying information, Judge Damille considered, *inter alia*, that Michael was attending a year of online studies in business management at Phoenix University and that, at his psychological CE, Michael "was successful in responding to two out of four simple numerical calculations and in solving two out of four word problems," "was able to recall 8 digits forward and 3 digits backward in immediate recall," and "was able to respond on both a concrete and more abstract level" when asked "questions that were intended to assess his social planning ability and capacity to formulate a practical judgment." (*Id.* at 29–30.) With respect to interacting with others, Judge Damille found Michael moderately limited, reasoning that, although Michael reported that "he has problems getting along with others and has been fired from jobs for arguing and fighting," he was "pleasant, cooperative and attempted to respond to all questions asked" during his psychological CE, and state agency consultants had found that Michael "has limited social tolerance but can relate

appropriately in settings with somewhat reduced social demands." (*Id.* at 30 (citing AR at 138, 372).) Next, in finding that Michael was moderately limited in concentrating, persisting, or maintaining pace, Judge Damille considered Michael's statements that he was "limit[ed] in concentration and completing tasks" but that he was "'somewhat coherent' in following spoken instructions." (*Id.* (quoting AR at 372).) Judge Damille also noted that, at the psychological CE, Michael "maintained consistent eye contact with the examiner and had no difficulty remaining seated for the examination." (*Id.* (citing AR at 880).) Further, in finding Michael moderately limited in adapting and managing himself, Judge Damille observed that, although Michael recounted a prior suicide attempt and "being overwhelmed with anxiety," "he has been generally stable and reported 'good control' of anxiety, mood, and psychotic symptoms on medication, as well as improved focus with Adderall." (*Id.* at 31 (citing AR at 933–1113, 1501–68).) Finally, Judge Damille concluded that Michael did not satisfy the alternative criteria for the relevant Listings, reasoning *inter alia* that Michael had not sought inpatient psychiatric treatment since his alleged onset date or application date and reported "respond[ing] well to medications, including improved focus, sleep, and good control of anxiety and depressive symptoms." (*Id.* (citing AR at 880, 1505)); *see* Listings § 12.00(A)(2)(c), (G).

As a precursor to Step Four, Judge Damille concluded, based on "careful consideration of the entire record," including Michael's hearing testimony, the objective medical evidence, medical opinions, and PAMFs, that Michael has the residual functional capacity ("RFC") to perform "light" work, *see* 20 C.F.R. § 416.967(b), but that any job he performs has to be limited in specified ways:

> [Michael] can stand and/or walk for 4 hours in an 8-hour day. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel or crouch, but never crawl. He can frequently handle, finger and feel with the upper extremities. He must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. He is able to understand, remember and carry out simple instructions. He is restricted to work

> involving few workplace changes and occasional decisionmaking. With respect to the essential functions of the job, he can have occasional interaction with supervisors, coworkers and the public.

(AR at 31–32; *see id.* at 31–42). In making this RFC determination, Judge Damille found that Michael's "medically determinable impairments . . . could reasonably be expected to cause the alleged symptoms" but that Michael's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 34; *see id.* at 31–42); 20 C.F.R. § 416.929.

In framing the RFC, Judge Damille considered Michael's own statements about his symptoms and functional limitations, as set forth in the Disability Report Michael submitted with his initial application (in August 2022) and on appeal (in March 2023), the Function Report Michael submitted on reconsideration (in June 2023), and Michael's hearing testimony before the ALJ (in May 2024). (AR at 32–34 (citing AR at 333–36, 350–57, 360–63, 367–74).) For example, Judge Damille noted Michael's statements in his Initial Disability Report that he has "work-related limitations due to bipolar disorder; schizophrenia, paranoid type; anxiety; disc degeneration of lumbosacral and thoracic spine, and idiopathic scoliosis; bursitis of hip and knee; asthma; and [carpal tunnel syndrome]." (*Id.* at 32 (citing AR at 333).) Judge Damille also considered Michael's Function Report statement that, "with being paranoid and depressed, he cannot function normally without medications, and his condition makes it hard to get along with others without treatment, so he sees a psychologist." (*Id.* at 33 (citing AR at 367–74).) Similarly, Judge Damille accounted for Michael's hearing testimony, including that "he has a hard time focusing and he takes Adderall," that "he is sometimes able to concentrate with the medications," that "he hardly sleeps and medication does not help him sleep at all," and that "he gets help with showering and he barely cooks on his own, but he prepares canned foods and microwaveable meals on his own." (*Id.* at 33–34.)

Also as part of the RFC determination, Judge Damille considered statements made on Michael's behalf by third parties who know him personally. Specifically, Judge Damille described hearing testimony from Michael's fiancée that she prepares Michael's meals, helps with his medication, and "do[es] all of the shopping and laundry." (*Id.* at 34.) Judge Damille also described the 2022 Third-Party Function Report submitted by Diane Hirko, Michael's "SOAR" representative,[3] wherein Hirko stated that Michael's "conditions limit his ability to work because he is very depressed and anxious, has paranoid thoughts, [and is] easily agitated, quick to blame others, and quick to escalation." (*Id.* at 32 (citing AR at 350–57).) Hirko further asserted that Michael has "symptoms of chronic back pain, mood swings, perseveration of thoughts, impulsiveness, AH (auditory hallucinations), racing thoughts, anxiety, and concrete thoughts," which lead to "functional limitations in lifting, squatting, bending, standing, walking, sitting, kneeling, talking, stair climbing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others." (*Id.*)

Additionally, Judge Damille considered Michael's treatment records and the opinions of state agency consultants, consultative examiners, and Michael's treating physicians. (*Id.* at 34–41.) As is most relevant to this appeal, Judge Damille assessed the opinions of Michael's primary care physician, Dr. Rubina Raza, and another treating physician from the same practice, internist Dr. Bhanwarlal Chowdhury. (*Id.* at 41; *see also id.* at 36–39.) Dr. Raza and Dr. Chowdhury provided RFC forms in which they assessed Michael's mental and physical limitations, respectively. (*Id.* at 41 (citing AR at 1569–72, 1576–79).)

[3] "The SSI/SSDI Outreach Access and Recovery, or SOAR, program aims to increase access to Social Security benefits for Mercer County seniors with substance use and/or mental health diagnoses who are homeless or at-risk of homelessness. SOAR case managers are specially trained to effectively complete and submit SSI/SSDI applications on behalf of elderly clients in need." *Services for Seniors & Disabled*, Cath. Charities, Diocese of Trenton, https://www.catholiccharitiestrenton.org/services/housing-food/.

Judge Damille found Dr. Raza's assessment of Michael's mental limitations partially persuasive. (*Id.* (citing AR at 1576–79).) As Judge Damille summarized, Dr. Raza opined in her Medical Source Statement form that Michael "has mild to moderate[] limitations in all areas of mental functioning" and "'has mental disabilities and cannot make decisions,' but he can manage benefits in his own best interest." (*Id.* (citing AR at 1576–78; quoting AR at 1577).) Judge Damille noted that Dr. Raza's finding of "no more than moderate functional limitations" was consistent with her treatment records, including that "Dr. Raza has prescribed medications to manage [Michael's] mental health symptoms, with progress notes indicating symptom response, i.e., 'good control' or at least partial relief, with medications." (*Id.* (citing AR at 933–1113, 1501–68).) However, because Dr. Raza's mild-to-moderate limitations throughout her Medical Source Statement were "internally inconsistent" with her opinion that Michael "cannot make decisions," Judge Damille found the latter opinion unpersuasive. (*Id.* (citing AR at 1576–78).) Judge Damille further noted that Michael's psychological CE showed "some cognitive deficits in memory and concentration" but also showed Michael "was able to do simple numerical calculations and word problems successfully, perform on serial 5s, and recall 8 digits forward in immediate recall, while exhibiting good reality ties and no evidence of a thought disorder." (*Id.* (citing AR at 880).) Accordingly, Judge Damille concluded that "the evidence of record is not consistent with finding an inability to 'make decisions'" but instead supported that Michael could perform "simple/unskilled work with few workplace changes and *occasional* decisionmaking, and occasional interaction with supervisors, coworkers, and the public." (*Id.*)

Judge Damille also considered Dr. Chowdhury's assessment of Michael's physical limitations, which he found unpersuasive. (*Id.* (citing AR at 1569–72).) Judge Damille summarized Dr. Chowdhury's Medical Source Statement as follows. Dr. Chowdhury opined that Michael could

sit, stand, and walk for "less than 1 hour" each at a time; requires a cane and back brace to stand and walk; and must alternate positions every two hours and elevate his feet every two hours due to back and foot pain. (*Id.* (citing AR at 1569).) Dr. Chowdhury further opined that Michael could never stoop, crawl, or climb; was unable to "lift even up to 5 pounds"; and could never "use either of his hands/arms for simple grasping, arm controls and/or fine manipulation." (*Id.* (citing AR at 1570–71).) Dr. Chowdhury indicated that Michael needed "one 5-minute rest period per hour" and needed to spend a "'substantial period' of the day" laying down or in a recliner. (*Id.* (citing AR at 1571).) Finally, Dr. Chowdhury "indicated these limitations to be 'permanent' in nature and reported diagnoses of scoliosis, asthma, COPD and CTS." (*Id.* (citing AR at 1572).) Judge Damille concluded that these limitations were "beyond what is reflected in the medical evidence of record." (*Id.*) For example, Judge Damille reasoned that the record evidence showed "only conservative treatment for physical impairments, inconsistent cane use, and evidence of normal gait without the use of a cane or other assistive device" as well as "minimal findings to support any limitations involving use of the upper extremities." (*Id.* (citing AR at 883–96, 1483–89, 1501–68).) Judge Damille further noted that "asthma/COPD appears to be controlled/stable with inhalers." (*Id.* (citing AR at 883–96, 933–1113, 1490–1500, 1501–68).)

Before turning to Step Five, Judge Damille noted that Michael has no past relevant work, as he had not engaged in substantial gainful activity during the five years preceding adjudication. (*Id.* at 42 (citing 20 C.F.R. § 416.965; SSR 24-2p, 89 Fed. Reg. 48479 (June 6, 2024)); *see id.* at 26.) Finally, at Step Five, Judge Damille found that, given Michael's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Michael] can perform." (*Id.* at 42 (citing 20 C.F.R. §§ 416.969, 416.969a).) Specifically, the VE testified, and the ALJ agreed, that Michael is capable of working as a merchandise marker, non-

government mail clerk, and photocopy machine operator. (*Id.* at 43; *see id.* (noting that these are "representative occupations").) Judge Damille accordingly concluded that Michael was not under a disability from his application date of April 12, 2022, through the date of the decision. (*Id.* (citing 20 C.F.R. § 416.920(g)).)

## II. LEGAL STANDARD

### A. STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak*, 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc.*

*Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B. Establishing Eligibility for Disability Insurance Benefits and Supplemental Security Income

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or him past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 416.920(a)–(f)).). The claimant bears the burden of proof at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III. <u>DISCUSSION</u>

To support his request for remand under 42 U.S.C. § 405(g), Michael argues that Judge Damille (1) improperly analyzed his treating physicians' medical opinions, (2) failed to account for his documented ADHD diagnosis, (3) erred in finding him capable of light work, and (4) omitted limitations from the hypotheticals posed to the vocational expert during the hearing.

(*See* Pl. Br. at 19–22.) Because "all other issues have been waived," the Court restricts its review to these arguments. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases). For the foregoing reasons, the Court affirms Judge Damille's detailed, thoughtful, and substantially supported 20-page decision.

### A. Treating Physicians' Medical Opinions

In determining Michael's RFC and finding him not disabled, Judge Damille considered the medical opinions provided by two of Michael's treating physicians, Dr. Rubina Raza and Dr. Bhanwarlal Chowdhury, and found those opinions, respectively, partially persuasive and unpersuasive. (AR at 41 (citing AR at 1576–79 (Dr. Raza's mental RFC form), 1569–72 (Dr. Chowdhury's physical RFC form).) As explained below, Michael largely relies on an outdated standard—the so-called "treating physician rule"—in arguing that Judge Damille failed to give "controlling weight" to the treating physicians' opinions and failed to "specifically note the weight he gave these opinions." (Pl. Br. at 20–21 (citing AR at 41).) This argument fails given that the treating physician rule was eliminated in 2017, and ALJs are not required to give "controlling weight" to treating physicians' opinions, or to assign specific weight to any medical opinions. Furthermore, to the extent Michael argues, under the relevant standard, that Judge Damille failed to adequately analyze the consistency and supportability of the treating physicians' opinions, this argument also fails, as Judge Damille's analysis was supported by substantial evidence for the reasons set forth below.

The Court begins with Michael's arguments that Judge Damille "erroneously failed to give . . . controlling weight" to the opinions of his treating physicians and "fail[ed] to specifically note the weight" given to the medical opinions in the record. (Pl. Br. at 20–21.) These arguments are without merit. The relevant regulations expressly provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including

those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Prior to March 2017, the regulations were different, and the so-called "treating physician rule" governed—but Plaintiff's application, filed in 2022, is not subject to the old regulations.[4] *See Beard v. Bisignano*, No. 24-1126, 2026 WL 2110457, at *4 (W.D. Pa. July 22, 2026) (rejecting claimant's argument that "opinions of his treating physicians should be given more weight" because "[t]he Third Circuit's 'treating physician rule' is not applicable" post-2017 revisions and "[t]he opinions of treating physicians are no longer given preferential treatment and instead no specific weight is given to opinions from any physician"); *Carin F. v. O'Malley*, No. 22-4193, 2024 WL 3949322, at *11 (D.N.J. Aug. 27, 2024) ("For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources."). Plaintiff's contentions to the contrary are thus incorrect as a matter of law.

Under the current regulations, ALJs must "evaluate the persuasiveness" of the medical opinions in the record based on the supportability and consistency of each. 20 C.F.R. § 416.920c(a) (explaining that ALJs consider five factors to assess the persuasiveness of medical opinions, with "[t]he most important factors" being supportability and consistency); *see Rivera ex rel. V.A.R. v. Kijakazi*, No. 21-03845, 2022 WL 16540670, at *5 (E.D. Pa. Oct. 28, 2022) ("The new regulations no longer require an ALJ to give a certain evidentiary *weight* to a medical opinion, but instead

---

[4] Plaintiff acknowledges that the treating physician rule was "eliminated" in 2017, yet simultaneously argues that Judge Damille "erred" by failing to give "controlling weight" to his treating physicians' medical opinions. (Pl. Br. at 21.) Meanwhile, even in the pre-2017 landscape, ALJs were "not required to give controlling weight to a treating physician's opinion" and could "afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Morgan v. Comm'r of Soc. Sec.*, 295 F. App'x 490, 492 (3d Cir. 2008) (quoting *Plummer*, 186 F.3d at 429); *see also Plummer*, 186 F.3d at 429 (explaining that prior regulations provided for controlling weight "where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record"); *Chandler*, 667 F.3d at 361 (explaining, under prior regulations, that "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, 'the law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity'" (cleaned up)).

require the ALJ to focus on the . . . *persuasiveness* of each opinion." (emphasis added) (citing 20 C.F.R. § 416.920c(a))); *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (explaining that ALJs need only address factors other than supportability and consistency if "opposing medical opinions are equally well-supported and consistent").[5] "Supportability" is "the extent to which a medical opinion uses relevant objective medical evidence and supporting explanations," and "consistency" depends on "how the medical opinion accords with the other medical and nonmedical sources on record." *Lynch v. Comm'r of Soc. Sec.*, No. 23-1982, 2024 WL 2237961, at *2 (3d Cir. May 17, 2024) (internal quotation marks omitted). "[P]rovided that the [ALJ's] decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence" to credit, not credit, or partially credit. *Moore v. Kijakazi*, No. 21-1769, 2023 WL 1973210, at *8 (M.D. Pa. Feb. 13, 2023).

To the extent Plaintiff argues that Judge Damille "failed to evaluate the [treating physicians'] opinion evidence under [the § 416.920c(a)] factors," he at least acknowledges the correct standard. (Pl. Br. at 21–22.) However, the Court finds no error in Judge Damille's analysis. As explained hereinbelow, the ALJ analyzed the supportability and consistency of both opinions, explained his findings regarding the persuasiveness of each, and supported his findings with substantial evidence. The Court reviews these medical opinions in turn, starting with Dr. Raza.

Judge Damille found "partially persuasive" the medical opinions offered by treating physician Dr. Raza regarding Michael's mental limitations. (AR at 41.) Judge Damille first

---

[5] The Court also notes that the ALJ accounted for additional factors such as treatment relationship and examining relationship. *See* 20 C.F.R. § 416.920c(c)(3); (*see, e.g.*, AR at 40 (analyzing persuasiveness of state agency consultants' opinions and noting that "consultants neither personally examined the claimant" and "the evidence and testimony received at the hearing level supports a finding of greater physical limitations")).

explained the opinions he found persuasive, namely that Michael had "no more than moderate functional limitations" in each area of mental functioning.[6] (*Id.*; *see id.* at 1576–77 (Dr. Raza opining that Michael is only mildly or moderately limited in all "checkbox" areas of mental RFC form).) The ALJ next explained the opinions he found "internally inconsistent" and insufficiently supported by other record evidence, namely Dr. Raza's conclusion that Michael was entirely incapable of making decisions. (*Id.* at 41; *see id.* at 1577 (Dr. Raza stating on mental RFC form that Michael "cannot make decisions").)

The Court begins with Judge Damille's supportability analysis—his conclusion that Dr. Raza failed to support her assessment that Plaintiff was unable to make decisions. Judge Damille reasoned that this opinion was unpersuasive because it was inconsistent with Dr. Raza's other opinions throughout her mental RFC form. (*Id.* at 41 (citing AR at 1576–78).) He explained that Dr. Raza rated Plaintiff as having "only 'mild' or 'moderate' limitations" in each area of mental functioning, (*id.*), where a "mild" limitation, according to the definition provided in the form, means Michael is "slightly limited" in his ability to function "independently, appropriately, effectively, and on a sustained basis" in the relevant area, and a "moderate" limitation refers to "fair" functioning, (*id.* at 1576). In particular, Judge Damille noted that Dr. Raza rated Michael as only moderately limited in his "ability to make judgments on simple work-related decisions" and his "ability to make judgments on complex work-related decisions." (*Id.* at 41); *see Owens v. Colvin*, No. 13-2504, 2014 WL 4672491, at *9 (M.D. Pa. Sept. 18, 2014) ("Moderate limitation in [certain] activities does not mean that [claimant] was incapable of performing such activities; the definition of moderate emphasizes that [claimant] is capable of functioning satisfactorily.").

---

[6] Dr. Raza rated Michael's limitations on a scale from "none" to "extreme" in two areas of mental functioning: his ability to (1) "understand, remember, and carry out instructions" and (2) "interact appropriately with supervision, co-workers, and the public." (AR at 1576–77.)

Further, as the ALJ stated, Dr. Raza found that Michael could manage benefits in his own best interest. (AR at 41 (citing AR at 1578 (Dr. Raza answering "Yes" to the question "Can the individual manage benefits in his/her own best interest?").) Judge Damille in turn concluded that these opinions were "internally inconsistent" with Dr. Raza's statement in the RFC form that Michael "cannot make decisions," and he accordingly found that opinion unpersuasive. (*Id.*); *see Solomon v. Saul*, No. 18-1443, 2020 WL 475496, at *2 (W.D. Pa. Jan. 29, 2020) ("Internal inconsistency is a valid and acceptable reason for discounting opinion evidence." (citing 20 C.F.R. § 416.927)).[7]

Judge Damille likewise provided a thorough consistency analysis, explaining that Dr. Raza's mild-to-moderate limitations ratings and opinions were consistent with other record evidence, unlike her opinion that Michael was unable to make decisions. (AR at 41.) As to the former, Judge Damille emphasized Dr. Raza's own treatment records: "Dr. Raza has prescribed

[7] Also relevant to the supportability of Dr. Raza's opinions is the fact that her RFC form contains effectively no narrative description of Plaintiff's limitations and no "supporting explanations." *See* 20 C.F.R. § 416.920c(c)(1) (explaining that the extent to which a medical opinion contains "supporting explanations" affects that opinion's supportability). Rather, Dr. Raza completed only the "checkbox" portions of the form and made a single additional notation that "[p]atient has mental disabilities and cannot make decisions." (*See* AR at 1576–79.) In so doing, Dr. Raza skipped each section designated for narrative explanations. After each set of checkboxes, the form asked Dr. Raza to "[i]dentify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support [her] assessment," but she did not answer this question. (*Id.*) The Court also notes that Dr. Raza's assessment did not include supporting information despite the mental assessment form stating in bold, capital letters that "**IT IS VERY IMPORTANT TO DESCRIBE THE FACTORS THAT SUPPORT YOUR ASSESSMENT. WE ARE REQUIRED TO CONSIDER THE EXTENT TO WHICH YOUR ASSESSMENT IS SUPPORTED.**" (*Id.* at 1576.) "[W]hen a medical opinion lacks . . . relevant supporting explanations, it cannot be said to be supported and, as it is lacking in that support, cannot be said to be persuasive." *Tamara D. v. Dudek*, No. 23-26, 2025 WL 1248903, at *8 (D.N.J. Apr. 30, 2025); *see also Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986) ("[W]here . . . residual functional capacity reports are unaccompanied by thorough written reports, their reliability is suspect.").

Notwithstanding these deficiencies, Judge Damille did not wholly discredit Dr. Raza's opinions; he found them "partially persuasive" and, as explained hereinbelow, described those opinions he found persuasive based on their consistency with other opinions in the record.

medications to manage [Michael's] mental health symptoms, with progress notes indicating symptom response, i.e., 'good control' or at least partial relief, with medications, which is consistent with no more than moderate functional limitations." (*Id.* (citing AR at 933–1113, 1501–68).) With respect to the latter, Judge Damille highlighted Michael's psychological CE, during which Michael "showed some cognitive deficits in memory and concentration" but "was able to do simple numerical calculations and word problems successfully, perform on serial 5s, and recall 8 digits forward in immediate recall, while exhibiting good reality ties and no evidence of a thought disorder." (*Id.* (citing AR at 880).) The ALJ found that Michael's cognitive abilities, as demonstrated at the psychological CE, were inconsistent with Dr. Raza's finding that he was entirely unable to make decisions. (*See also id.* at 30 (noting that Michael "was able to respond on both a concrete and more abstract level" when "presented with questions that were intended to assess his social planning ability and capacity to formulate a practical judgment" during his psychological CE (citing AR at 880)).) "By pointing out the daylight between the Doctor's assessment and other evidence in the record . . . the [ALJ] fulfilled his 'consistency' obligation." *Tammy L. Z. v. Comm'r of Soc. Sec.*, No. 23-295, 2025 WL 1779229, at *2 (D.N.J. June 27, 2025) (citing 20 C.F.R. § 416.920c(c)(2); *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024)).

Judge Damille also considered the medical opinions by Michael's treating physician Dr. Chowdhury. Judge Damille found these opinions unpersuasive, again based on a thorough, well-reasoned supportability and consistency analysis. (AR at 41.) Like Dr. Raza, Dr. Chowdhury completed an RFC form setting out his medical opinions. (*Id.* at 1569–72.) Also like Dr. Raza, Dr. Chowdhury did not offer supporting explanations for his opinions in the form, nor did he cite or reference any treatment records or findings therein. (*See id.*); *see supra* note 7. The "Medical Questionnaire to Determine Physical Capacities" form Dr. Chowdhury completed required him to

only fill in blanks and circle or check off a particular option. (*Id.*); *see Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." (citing *Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir. 1986))).

Moreover, Judge Damille found that Dr. Chowdhury's opinions as to Michael's physical limitations were "beyond what is reflected in the medical evidence of record." (AR at 41.) While Dr. Chowdhury opined that Michael could not stand or walk without a cane and back brace, the medical evidence of record supported "only conservative treatment for physical impairments, inconsistent cane use, and evidence of normal gait without the use of a cane or other assistive device." (*Id.* (citing AR at 883–96, 1483–89, 1501–68); *see id.* at 27–28 (noting that, during physical CE, Michael "ambulated without difficulty, without using a cane or crutches (or other assistive device)"; could "get on and off the examining table without assistance"; and could "heel and toe walk" (citing AR at 885)); *id.* at 36 (same).) Similarly, while Dr. Chowdhury opined that Michael could "never lift even up to 5 pounds" and was "unable to use either of his hands/arms for simple grasping, arm controls, and/or fine manipulation," Judge Damille explained that "[t]here are . . . minimal findings to support any limitations involving any use of the upper extremities." (*Id.* at 41 (citing AR at 884–86, 1570); *see id.* at 27 (explaining that, during physical CE, Michael exhibited normal reflexes in upper extremities, normal range of motions of shoulders, elbows, forearms, wrists, and fingers, and "grip strength rated at 5/5 bilaterally" (citing AR at 884–86)); *see id.* at 28, 36–37 (same).) Indeed, Michael testified that he performs "community service" by "clean[ing] up the street like sweeping outside" with a "little broom," which contradicts Dr. Chowdhury's opinion that Michael is incapable of simple grasping and arm control. (*Id.* at 68; *see id.* at 34); *see also Aeling v. Saul*, No. 18-824, 2020 WL 7768407, at *14 (D.N.J. Dec. 30, 2020)

(finding that ALJ did not err in finding that treating physician's opinion was "undermined by the claimant's own testimony that she was able to do laundry, which shows more ability to lift than what [treating physician] had opined"). Finally, Judge Damille found unpersuasive Dr. Chowdhury's opinion that Michael had permanent limitations due to asthma and COPD, given the evidence of record showing that both conditions were "controlled/stable with inhalers." (AR at 41 (citing AR at 883–96, 933–1113, 1490–1500, 1501–68).) The ALJ cited, *inter alia*, treatment notes from Dr. Raza indicating that Michael requested refills of his asthma and COPD medications on multiple occasions and did not report wheezing when he was taking his medications. (*Id.* (citing AR at 1523, 1529, 1543).)

Based on the foregoing, "it is apparent that the ALJ wove supportability and consistency throughout his analysis of" Dr. Chowdhury's opinions. *W.N. v. Comm'r of Soc. Sec.*, No. 24-11441, 2026 WL 836535, at *2 (D.N.J. Mar. 26, 2026); *see Mascarinas v. Berryhill*, No. 18-10543, 2020 WL 2214480, at *4 (D.N.J. May 7, 2020) (finding that "observed inconsistencies" between medical opinion and other evidence in the record "are sufficient to discount Claimant's treating physicians' opinions"). His conclusion that Dr. Chowdhury's opinions were unpersuasive was properly explained and supported by substantial evidence.

Michael offers no real argument for how Judge Damille erred in his analysis of either treating physician's medical opinions. When not insisting that "controlling weight" is due under an outdated rule, Michael simply asserts, in conclusory fashion, that Judge Damille "did not properly consider" his treating physicians' opinions and "failed to evaluate the opinion evidence under [the relevant] factors." (Pl. Br. at 20–22.) At best, Michael offers only broad statements of general legal principles with no articulation of how Judge Damille erred based on anything

concrete in the ALJ's decision or the record evidence.[8] (*See id.*) Meanwhile, as set out above, Judge Damille's decision is thorough, well explained, and well supported. Judge Damille properly analyzed the supportability and consistency of the opinions provided by Michael's treating physicians Dr. Raza and Dr. Chowdhury, provided cogent reasons for why he found them partially persuasive and unpersuasive, respectively, and supported his findings with substantial evidence. He explained, with clear reasoning and ample support in the record, that Dr. Raza's opinions were persuasive to the extent she found Michael no more than moderately limited in the relevant areas of mental functioning, as those opinions were supported by her various answers across the RFC form and consistent with other record evidence. He disagreed, however, with Dr. Raza's lone statement that Michael could not make decisions, as that opinion was unsupported by her other RFC form responses and inconsistent with other record evidence. Judge Damille also duly considered the various physical limitations that Dr. Chowdhury found, then explained the ample record evidence that was inconsistent with those limitations and thus made Dr. Chowdhury's opinions unpersuasive. The Court finds no error in Judge Damille's exhaustive evaluation of these opinions.

---

[8] For example, Michael cites *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), and *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985), in support of his bare assertion that Judge Damille "seemingly independently reviewed and interpreted medical records, and in doing so, impermissibly substituted his own judgment for that of a physician." (Pl. Br. at 21–22.) Both cases are distinguishable, not least because they applied the outdated treating physician rule. Even putting that aside, the Third Circuit found error in both cases because the ALJs had rejected treating physicians' opinions that were amply supported by other record evidence without giving an adequate explanation or support for that rejection. *See Morales*, 225 F.3d at 317; *Ferguson*, 765 F.2d at 37. In contrast, "this is hardly a case where the ALJ rejected a medical opinion without any basis"—nor did Judge Damille reject Dr. Raza's opinion; he found it partially persuasive. *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015). Here, Judge Damille properly explained and supported his supportability and consistency conclusions. *See Plummer*, 186 F.3d at 429–31 (rejecting claimant's argument that "ALJ improperly substituted her own judgment in place of the medical evidence" where ALJ discounted treating physician's opinion based on substantial evidence, including contradictions between that opinion, treating physician's own treatment records, and other medical opinions in the record).

### B. MICHAEL'S ADHD DIAGNOSIS

Michael also argues that, "in his mental RFC finding, the ALJ did not take into account Plaintiff's ADHD." (Pl. Br. at 19.) He emphasizes that Judge Damille did not identify ADHD as a severe (or non-severe) impairment, (*id.*), but ignores the fact that, notwithstanding this formalistic characterization, Judge Damille thoroughly considered the symptoms of Michael's ADHD and the effects of those symptoms on his mental capacity.[9] *See Gunn v. Comm'r of Soc. Sec.*, 16-05313, 2017 WL 4786558, at *6 n.4 (D.N.J. Oct. 24, 2017) ("It is not the name of a specific diagnosis that is relevant to the disability determination, but rather how a person's symptoms affect a person's ability to work."). Likewise, Michael asserts that "the ALJ omitted that Dr. Rubina Raza diagnosed ADHD and prescribed Adderall" and "Plaintiff also testified about ADHD and taking Adderall"—both of which Judge Damille explicitly considered throughout his decision. (Pl. Br. at 65 (citations omitted).)

In determining Michael's RFC and finding him not disabled, Judge Damille considered the evidence of record pertaining to Michael's ADHD, including Michael's complaints that he has difficulty focusing because of ADHD, various medical records and opinions related to his diagnosis and treatment, and his own statements that prescription medication improves his ADHD

[9] Although Michael does not argue for remand under Step Two, the Court notes that any such argument would be unsuccessful. As explained *infra*, while Judge Damille "did not specifically identify" Michael's ADHD "by name" at Step Two, he "'adequately considered' the impairment by carefully addressing its underlying symptoms in determining [Michael's] RFC." *Frederick T. v. Comm'r of Soc. Sec.*, No. 25-1421, 2025 WL 3754251, at *7 (D.N.J. Dec. 29, 2025) (quoting *Sara W. v. Comm'r of Soc. Sec.*, No. 23-869, 2024 WL 658047, at *4 (D.N.J. Feb. 16, 2024)). Furthermore, "[i]t is well established that any omission of an impairment at Step Two is harmless error, provided that the ALJ determines that the claimant has at least one severe impairment and continues onto the subsequent steps of the sequential analysis." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *4 (D.N.J. Apr. 16, 2024) (collecting cases); *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford*, 399 F.3d at 553)); *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) ("The step-two inquiry is a de minimis screening device to dispose of groundless claims."). It is undisputed that Judge Damille found that Michael has six severe impairments and reached all five steps of the evaluation process. (AR at 27–28; *see id.* at 43.)

symptoms. (AR at 30–34, 38–40.) Judge Damille observed, for example, that Michael told his primary care physician Dr. Raza, during a March 2023 appointment, that he was having "difficulty focusing"—and that Dr. Raza in turn prescribed Adderall, which led Michael to report, during a May 2023 follow-up appointment, that he was "doing well with Adderall 20 mg for alleged ADHD." (*Id.* at 39 (citing AR at 1542); *see id.* at 1546.) Judge Damille similarly highlighted Dr. Raza's treatment notes from a follow-up appointment a few months later, in September 2023, during which Michael "reported running low on his Adderall and requested refill of that medication, indicating that his current regimen is therapeutic." (*Id.* (citing AR at 1523); *see id.* at 1523 (treatment note stating that "[Michael] reports that his current regimen is therapeutic and requests for refill"); *see also id.* at 41 ("Dr. Raza has prescribed medications to manage the claimant's mental health symptoms, with progress notes indicating symptom response, i.e., 'good control' or at least partial relief, with medications." (citing AR at 933–1113, 1501–68)).) Judge Damille considered still more treatment records, across practitioners and time, as well as additional statements by Michael and non-medical third parties addressing Michael's ADHD, ability to concentrate and focus, and treatment. (*E.g.*, *id.* at 31 (citing AR at 933–1113, 1501–68), 32 (citing AR at 350–57), 33–34 (citing AR at 367–74), 38 (citing AR at 879–82), 39 (citing AR at 1505, 1523, 1542), 40 (citing AR at 139–40, 879–82).)

Judge Damille also examined Michael's own statements about his ADHD symptoms and treatment. Judge Damille recounted, *inter alia*, Michael's hearing testimony that "he is able to focus with Adderall, such that he can do his online studies in business management." (*Id.* at 40; *see id.* at 38 (explaining that Michael was completing a one-year business management program at Phoenix University)); *see also Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011) (finding that ALJ properly considered claimant's daily activities when partially discrediting subjective

accounts of symptom severity). Indeed, in response to a question from his attorney regarding "his attention span when [he does] online courses," Michael responded, "After I take the Adderall, after I take medication, I focus a little bit and then I'm good." (AR at 69.) Throughout his decision, Judge Damille repeatedly considered similar testimony and statements from Michael about his ability to focus and his treatment with Adderall.[10] (*See id.* at 34 ("[Michael] stated that he spends his time doing community service, cleans and sweeps, listens to the radio, and studies business management online, indicating he can focus with Adderall."); *see also id.* at 33 ("[Michael] testified that he has a hard time focusing and he takes Adderall for alleged ADHD, while noting that he is sometimes able to concentrate with the medications.").) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Beata N. v. Bisignano*, No. 24-10846, 2026 WL 1481323, at *7 (D.N.J. May 27, 2026) (quoting *Dearth v. Barnhart*, 34 F. App'x 874, 875 (3d Cir. 2002)); *see Dearth*, 34 F. App'x at 875 (finding that substantial evidence supported ALJ's RFC determination where doctors testified that plaintiff "functioned reasonably well when receiving regular psychiatric treatment including medication" and plaintiff "himself . . . told his doctor that his regimen of Paxil 'seem[ed] to be working' and that he felt 'pretty good'"); SSR 16-3p, 2017 WL 5180304, at *7–8 (Oct. 25, 2017) (providing that "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms" are factors in "evaluat[ing] the intensity, persistence, and limiting effects of an individual's symptoms" under 20 C.F.R. § 416.929(c)(3)).

---

[10] In his reply brief, Michael again asserts that this case is similar to *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), because Judge Damille made an "improper conclusion from personal observation and speculation that ADHD was not a factor in concentrating, persisting or maintaining pace" and "discounted ADHD because Plaintiff testified at the hearing that he can focus with Adderall." (Reply at 8.) As explained, *see supra* note 8, this characterization is inaccurate. It goes without saying that an ALJ does not engage in "personal observation and speculation" where, as here, his conclusions are based on substantial evidence, including treatment records and the claimant's own hearing testimony.

Michael's argument that Judge Damille "did not take into account [his] ADHD" is incorrect and without merit. (Pl. Br. at 19.) To the contrary, Judge Damille extensively considered Michael's ADHD symptoms and concluded, based on substantial evidence in the record, that any such symptoms are well managed with Adderall and do not limit Michael to the extent alleged. *See Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 133 (3d Cir. 2021) (explaining that ALJs must assess "whether [the claimant's] complained-of symptoms are reasonably 'consistent with the objective medical evidence and other evidence'"); *Keveanos v. Berryhill*, No. 18-3421, 2019 WL 1500624, at *11 (D.N.J. Apr. 5, 2019) ("An ALJ may reject, or only partially credit, subjective complaints if they are not credible in light of the other evidence of record."); *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision . . . ."); *Seney v. Comm'r of Soc. Sec.*, 585 F. App'x 805, 809 (3d Cir. 2014) (per curiam) (finding that ALJ properly considered, *inter alia,* "the medication that [claimant] was taking, and its side effects" in finding that she was not disabled).

Michael appears to additionally argue that Judge Damille erred by finding him capable of unskilled work. (Pl. Br. at 19.) Michael asserts that "unskilled work" requires "the ability to maintain attention for extended periods of 2-hour segments," seemingly implying that he lacks this ability and the ALJ would have limited Michael accordingly if he had not "omitted" Michael's ADHD. (*Id.*); *see* POMS DI 25020.010(B)(3)(d) (explaining that "unskilled" work requires "the ability to . . . [m]aintain attention for extended periods of 2-hour segments (concentration is not critical)"). To the extent that is Michael's argument, it is unsupported and undeveloped. As Judge Damille explained, the state agency consultants opined in their PAMFs that Michael could "focus on simple tasks for 2-hour periods with routine breaks" and "maintain 'CPP' (concentration,

persistence, pace) throughout a regular workweek." (AR at 40 (citing AR at 137–39).) Judge Damille found these opinions "generally persuasive" based on their supportability and consistency, and Michael does not dispute that conclusion.[11] (*Id.*) Judge Damille properly considered the PAMFs in the record alongside other record evidence to assess Michael's ability to concentrate and maintain attention. *See, e.g., Chandler,* 667 F.3d at 361.

### C. Light Work Limitations in the RFC

Michael similarly contends that the ALJ erred in finding him capable of performing light work because "[l]ight work usually . . . requires walking or standing approximately six hours of the day," yet Judge Damille found that Michael "could stand or walk for only 4 hours in an 8-hour day." (Pl. Br. at 19 (citing POMS DI 25001.001).) However, Judge Damille did not err in finding Michael capable of light work with a further limitation on the amount of time he can stand or walk during a given day, nor did he err in finding, based on the VE's testimony about available jobs for those limitations, that Michael is not disabled.

Michael's argument "hinges on the incorrect assumption that the 'added limitation of 4 hours standing and walking' somehow takes [his] RFC out of the light exertional level. [Plaintiff's] limitation to standing and walking for four hours does not mean he is incapable of performing jobs designated at the light exertional level." *Tyler S. v. Comm'r of Soc. Sec.*, No. 23-20521 (RK), 2024 WL 4124242, at *6 (D.N.J. Sept. 9, 2024). So too, Michael "overlooks the possibility that an RFC

---

[11] Plaintiff also contends that, "[a]lthough the ALJ did not include ADHD in his fifth hypothetical [to the VE during the hearing], he asked the VE to assume that the individual would need to be off task 15 percent of the workday above normal breaks." (Pl. Br. at 19.) Plaintiff cites the VE's testimony that this percentage of off-task time "would . . . preclude all competitive employment." (*Id.* at 19–20 (citing AR at 78).) Insofar as Michael suggests that the ALJ was required to find that Plaintiff would be off task fifteen percent of the workday merely because the ALJ posed a hypothetical with that premise, he is incorrect. *See Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 690 (3d Cir. 2020) ("The ALJ's . . . hypothetical question about a person who would be off-task fifteen percent of the time, does not bind him to the premise of the question, nor to the expert's answer that such a hypothetical person would not be capable of performing past work."). Nor does Michael affirmatively argue, let alone support, that he would be off task that amount of time.

assessment may fall between exertional categories." *Johnson v. Colvin*, No. 15-1463, 2016 WL 3144250, at *2 (M.D. Pa. June 6, 2016); *see id.* at *1–2 (rejecting plaintiff's challenge that "the ALJ's RFC assessment is internally inconsistent because it would be impossible for [plaintiff] to engage in light work . . . if she is limited to two hours of standing per day" and explaining that "a claimant's RFC may not coincide with one of the defined exertional ranges of work"). "An ALJ is not required to rigidly apply exertional categories. Rather, where additional limitations exist such that a claimant does not fall neatly within an exertional category, an[] ALJ should take those limitations into account when determining a claimant's RFC and appropriately reduce the occupational base to fit the claimant's individual characteristics at step five of the process." *Dewitt v. Berryhill*, No. 17-1283, 2019 WL 1040964, at *2 (W.D. Pa. Mar. 5, 2019) (internal quotation marks omitted) (citing 20 C.F.R. § 416.969; SSR 83-12, 1983 WL 31253 (Jan. 1, 1983)). Indeed, the Third Circuit and district courts herein routinely uphold ALJs' determinations that claimants can perform light work subject to additional restrictions supported by the record evidence, including additional restrictions on standing or walking time. *See, e.g.*, *Orbin v. Barnhart*, 38 F. App'x 822, 823 (3d Cir. 2002) (upholding ALJ's RFC determination "limit[ing] [claimant] to light work that involves standing or walking of up to only three hours in an eight hour work day and accommodates postural limitations with a sit/stand option"); *Golden v. Comm'r of Soc. Sec.*, No. 18-12196, 2019 WL 6113897, at *2–3 (D.N.J. Nov. 18, 2019) (finding that "[s]ubstantial evidence supports the ALJ's determination regarding Plaintiff's ability to perform light work with certain additional restrictions" such as standing and/or walking for only two hours in an eight-hour workday); *see also Palmer v. Colvin*, No. 14-311, 2015 WL 5286171, at *9 (W.D. Pa. Sept. 10, 2015) ("[T]he ALJ properly accounted for [claimant's impairments] by limiting him to light work with a sit/stand option . . . ."); *Brunner v. Astrue*, No. 07-124, 2008 WL 4372726, at *4 (W.D. Pa.

Sept. 23, 2008) ("[T]he ALJ did not err in concluding that plaintiff can perform light work with the additional restrictions set forth in the RFC Finding.").

In turn, when a plaintiff's RFC "does not . . . fall neatly into either category [of sedentary or light work]," the VE "can provide a more individualized analysis as to what jobs the claimant can and cannot perform" with his specific limitations. *Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003); *see Fleming v. Kijakazi*, No. 20-234, 2023 WL 7222034, at *4–5 (W.D. Pa. Nov. 2, 2023) (explaining "cases in which the RFC is between two exertional levels"); *Adeline R. v. King*, No. 22-6544, 2025 WL 414729, at *9–10 (D.N.J. Feb. 6, 2025) (collecting cases). Here, in his second hypothetical to the VE, Judge Damille included "a restriction of standing and/or walking no more than four hours out of an eight-hour day." (AR at 75–76.) In response, the VE provided three examples of positions that Michael could perform with that restriction and the others in the RFC. (*Id.* at 76; *see id.* at 43& n.1.) Accordingly, Judge Damille properly found Michael capable of light work with an additional standing/walking limitation, properly incorporated that limitation at Steps Four and Five, and committed no error. *See Dewitt*, 2019 WL 1040964, at *2 (rejecting plaintiff's argument that "limit[ation] to two hours of standing/walking during the typical eight hour workday . . . restricts her to 'sedentary' work because 'light' work requires standing or walking off and on for a total of approximately six hours" and explaining that ALJ properly "consult[ed] a vocational source" to determine jobs plaintiff could perform with her specific limitations).

### D. LIMITATIONS INCORPORATED IN VE HYPOTHETICALS

Finally, Michael argues that Judge Damille erred because he did not include "all of Plaintiff's limitations" in the hypotheticals he posed to the VE during the hearing. (Pl. Br. at 20.) It is well established that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*" as opposed to "every impairment *alleged* by a

claimant." *Rutherford*, 399 F.3d at 554; *see id.* (explaining that "credibly established limitations" "are medically supported and otherwise uncontroverted in the record"); *Smith-Seright v. Comm'r of Soc. Sec.*, No. 18-4269, 2019 WL 1916201, at *4 (D.N.J. Apr. 30, 2019) ("With respect to RFC assessments, an ALJ is not required to include every alleged limitation in their hypotheticals and RFC assessments." (citing *O'Bryan v. Colvin*, No. 13-529, 2014 WL 4649864, at *6 (W.D. Pa. Sept. 16, 2014)). As explained *supra*, Michael has not demonstrated any "credibly established" limitation missing from Judge Damille's RFC determination, so he cannot succeed on an argument that Judge Damille's hypotheticals were deficient.[12] *Berkheimer v. Comm'r of Soc. Sec.*, No. 20-49, 2021 WL 3038762, at *7 (W.D. Pa. July 19, 2021) ("[B]ecause the RFC determination was not in error, the corresponding hypotheticals to the VE were not in error and reflected all of [plaintiff's] impairments."); *see Russo*, 421 F. App'x at 192. Furthermore, having reviewed the RFC side by side with the hypotheticals the ALJ posed to the VE, the Court finds no RFC limitation found at Step Four that is missing from Judge Damille's hypotheticals at Step Five. (*See* AR at 31, 74–78.) Accordingly, Judge Damille did not err in framing his questions to the VE at Step Five, and Michael's challenge to this aspect of the ALJ's decision also fails. Accordingly, and for the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

---

[12] Put another way, "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8. When a plaintiff argues that the VE testimony "cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert," he is making a challenge "to the RFC assessment itself." *Id.* As already explained, Michael's challenges to Judge Damille's RFC determination are unsuccessful. Moreover, it is of no moment whether Michael's argument is framed as a Step Four or Step Five challenge, as it is ultimately unavailing.

**CONCLUSION**

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: September 16, 2026